**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

<u>**NOT FOR PUBLICATION**</u>

<u>LETTER OPINION</u>

December 12, 2008

Shelley Ann Weinberg, Esq.  Dennis J. Canning, Esq.
Shelley A. Weinberg, P.C.  Social Security Administration
17 Academy St., Suite 706  26 Federal Plaza, Room 3904
Newark, NJ 07102  New York, NY 10278

      Re:   **Diaz v. Commissioner of Social Security**
              **Civil Action No.: 07-5751 (JLL)**

Dear Counsel:

      Presently before the Court is Plaintiff's Complaint seeking review of the Administrative Law Judge's ("ALJ") decision denying Plaintiff's Disability Insurance and Supplemental Security Income benefits. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth below, this Court remands this matter to the ALJ for further consideration.

**PROCEDURAL BACKGROUND**

      On August 13, 2004, Plaintiff filed applications for Disability Insurance and Supplemental Security Income benefits, alleging an inability to work beginning in January of 2004. The applications were denied. A hearing was held on July 7, 2006 before ALJ Dennis O'Leary. In a decision issued on August 9, 2006, the ALJ found Plaintiff not to be disabled.

      In his opinion, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through the date of the decision and that she had not engaged in any significant gainful activity at any time relevant to the proceedings. He also found that her "asthma, status post foot fracture, headaches, degenerative disc disease and kidney stones" were "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c). (R. at 26) On the other hand, he found Plaintiff's "mental impairment" was not severe, resulting in no "more than minimal limitations in her ability to perform work related mental functioning." (R. at 20) He further determined that Plaintiff's "medically determinable impairments [did] not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4." (R. at 26) He found that Plaintiff's residual functional capacity ("RFC") permitted "a significant range of sedentary work," including the ability "to lift and carry up to ten

1

pounds [occasionally] and less than ten pounds [frequently,]¹ . . . to stand and or walk up to two hours and to sit at least six hours in an eight-hour workday[, and] . . . to crouch, stoop and kneel occasionally." (R. at 26, ¶¶ 6, 11) However, he also found that Plaintiff "must avoid jobs involving concentrated exposure to dust, fumes, gases and extreme temperatures." (R. at 26) Based on these findings, the ALJ found Plaintiff unable to perform any of her past relevant work which "involved standing most of the workday and/or lifting more than ten pounds frequently." (R. at 24) However, he did find that "there are a significant number of jobs in the national economy that [Plaintiff] could perform," and, therefore, found Plaintiff was not disabled. (R. at 26, ¶¶ 12-13)

On October 4, 2007, the Appeals Council denied further review. Plaintiff now appeals the ALJ's opinion.

## **LEGAL STANDARDS**

Plaintiff makes the following arguments challenging the ALJ's opinion: (1) the finding that Plaintiff's mental impairment is not severe lacks substantial evidence; (2) the determination that Plaintiff's impairments cause no significant non-exertional limitations lacks substantial evidence; (3) the ALJ's decision overall lacks substantial evidence because he failed to consider the combined effects of all of Plaintiff's impairments; and (4) the ALJ's conclusion that Plaintiff could perform the full range of sedentary work lacks substantial evidence.²

    **A.**    **Standard of Review**

This Court must affirm the ALJ's decision if it is supported by substantial evidence. See 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, when " the [ALJ] is faced with conflicting evidence, [she] must adequately explain in the record [her] reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The District Court must review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). But, the reviewing court is not "empowered

---

¹In the findings section of the ALJ's opinion, the ALJ wrote that Plaintiff was "able to lift and carry up to ten pounds *frequently* and less than ten pounds *occasionally*." (R. at 26 (emphasis added)) However, in the body of the opinion, the wording is as it appears above in this opinion, which is consistent with the rest of the ALJ's findings.

² Plaintiff also argues that the ALJ's determination that Plaintiff's kidney stones are of insufficient duration lacked substantial evidence. The ALJ does comment in his opinion that the kidney stone "impairment cannot be expected to continue for twelve months." (R. at 23) However, given that the ALJ found Plaintiff's kidney stones to be a severe impairment at step two, this Court construes Plaintiff's argument not as one related to the ALJ's severity determination, but rather as one related to how the ALJ accounted for this impairment in his overall assessment of Plaintiff's RFC and ability to do other work at step five.

to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. The Five Step Evaluation Process

Under the Social Security Act, a claimant must demonstrate that she is disabled based on an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do his previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If she is not employed, then the Commissioner proceeds to step two. At step two, the Commissioner must determine whether the plaintiff's impairment or combination of impairments is severe. If the impairment is not "severe," the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner must decide whether the plaintiff suffers from a listed impairment. If the plaintiff does not suffer from a listed impairment or its equivalent, then the Commissioner moves to step four. At step four, the Commissioner determines whether based on plaintiff's residual functional capacity ("RFC") she can still do her past relevant work. If the Commissioner determines that plaintiff can no longer perform her past work, then she proceeds to step five. The burden of proof is on the plaintiff at these first four steps. See Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). At step five the burden shifts to the Commissioner to show that other work exists in significant numbers in the national economy that the plaintiff could perform given her RFC, age, education, and past work experience. If the Commissioner cannot show that work exists which Plaintiff could perform, then the plaintiff is entitled to disability benefits.

### C. Plaintiff's claims

#### 1. Plaintiff's Mental Impairment

Plaintiff argues that the ALJ's finding at step two that Plaintiff's mental impairment was not severe lacked substantial evidence. The ALJ found that Plaintiff's "mental impairment is not shown to result in more than minimal limitations in her ability to perform work related mental functioning," concluding that the mental impairment was not severe. (R. at 20) In his opinion, he stated that Plaintiff "did not mention any depressive symptoms at the hearing and there is no evidence documenting any treatment for depressive disorder." (Id.) Additionally, the ALJ gave little to no weight to the reports of Dr. Koshnu, a psychiatrist who evaluated Plaintiff. Dr. Koshnu's reports found that Plaintiff suffered from major depression, had a global assessment of functioning score

3

("GAF") of 55-60, and, in his report to the state welfare agency, that she was unable to work. The ALJ found Dr. Koshnu's conclusions not to be substantiated by his specific findings in the reports. The ALJ noted that Dr. Koshnu had only seen Plaintiff two times and found that "[h]is statement is clearly based on [Plaintiff's] self-reporting." (R. at 23).

Where a plaintiff asserts mental impairments, the same five step evaluation is used, but the Commissioner "must follow a special technique at each level in the administrative review process." 20 C.F.R §§ 404.1520a, 416.920a; see also Morales v. Apfel, 225 F.3d 310, 316 n.7 (3d Cir. 2000). This special technique provides that once a medically determinable mental impairment is identified, then the Commissioner must "[c]onsider and evaluate [the] functional consequences of the mental disorder(s)" as they relate to four specific functional areas in order to determine if the impairment is severe. 20 C.F.R §§ 404.1520a(a)(2), 416.920a(a)(2). The ALJ's decision

> must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in . . . this section.

20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). To assist in this process, "[a]t each level of administrative adjudication, a Psychiatric Review Treatment Form must be completed." Morales, 225 F.3d at 316 n.7 (citing 20 C.F.R. § 404.1520a(d)). Additionally, in making an impairment determination, "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Id. at 317. The court in Morales noted that "an ALJ's personal observations of the claimant 'carry little weight in cases . . . involving medically substantiated psychiatric disability.'" Id. at 319 (quoting Daring, 727 F.2d at 70). Furthermore, the Commissioner should " seek additional evidence or clarification from [a claimant's] medical source when the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1).

Here, although the ALJ's comments are not entirely consistent, he appears to find that Plaintiff had some mental impairment, albeit one that he determined had no "more than minimal limitations in [Plainiff's] ability to perform work related mental functioning." (R. at 20) Therefore, this Court focuses not on whether Plaintiff had any mental impairment under the regulations, but rather whether the finding that the impairment was not severe was based on substantial evidence.

Before addressing Dr. Koshnu's reports, this Court finds several statements in the ALJ opinion to be in error. The ALJ stated that there was no mention of depressive symptoms at the hearing and that there was no evidence that Plaintiff had been treated for depressive disorder. At the hearing Plaintiff stated that she "feel[s] kind of depressed." (R. at 738) She also stated that she had seen both a psychiatrist and a psychologist and was taking medication for depression. (R. at 740) She stated that she had stopped seeing them because she no longer had insurance. (Id.) Additionally, in Dr. Koshnu's "Comprehensive Psychiatric Evaluation" report dated August 9, 2005, he noted that

4

Plaintiff had been "referred [to him] by her medical doctor for depression [and] anxiety," and that she was "seeing a therapist at [Northwest Essex Community Healthcare Network], named Stephen Rapsas." (R. at 226) Dr. Koshnu also noted that Plaintiff was taking Zoloft at the time of the evaluation, which had been "started by the medical doctor one month ago." (R. at 227) Based on his evaluation he recommended that Plaintiff continue taking Zoloft. (R. at 350) The record indicates that Dr. Koshnu issued a Zoloft prescription for Plaintiff in December of 2005, (R. at 492), and a hospital admission form from August 2005 lists Zoloft as a medication that Plaintiff was taking daily for anxiety, (R. 294). Additionally, at least as far back as August of 2004, Plaintiff, in her Disability Report questionnaire to the New York State Office of Temporary and Disability Assistance, stated: "Lately I have been feeling depressed because of my situation, so I sometimes do not leave the house at all." (R. at 104)

It does not appear from the record that any report from Stephen Rapsas was considered in determining the severity of Plaintiff's mental limitations. Nor does it appear that information was obtained and considered from Plaintiff's medical doctor who referred her for psychiatric treatment and prescribed medication for depression or from any other medical expert hired to complete a psychiatric review of Plaintiff.

With regard to Dr. Koshnu's evaluation and opinion, this Court finds that the ALJ was in error to disregard the psychiatrist's assessment based on his own speculative determinations as opposed to contradictory medical information. There are, in the record, no contradictory medical reports finding that Plaintiff did not suffer from a mental impairment. In fact, as noted above, there is evidence in the record that Plaintiff was being treated for depression and anxiety. Although Dr. Koshnu appears only to have seen Plaintiff twice, he was a treating psychiatrist – he evaluated her and prescribed medication for her after a referral from Plaintiff's medical doctor. Because of the limited contact with Plaintiff, if balanced against other contradictory medical reports or evaluations, the weight required to be accorded to his opinion may be different than had he been her treating physician for years, but the fact that he saw Plaintiff as a patient and then provided some treatment cannot be completely disregarded as if Dr. Koshnu were merely evaluating Plaintiff to determine her eligibility for welfare, as the ALJ opinion implies. It is true that Dr. Koshnu provided an evaluation for welfare eligibility in December 2005, but it appears from the record that his evaluation was sought by the state *because* Plaintiff "state[d] that he/she is under [Dr. Koshnu's] care." (See R. at 502) Finally, although Dr. Koshnu may have based his opinion at least in some part on self-reporting from Plaintiff, he is a psychiatrist who was evaluating Plaintiff for a mental condition not an ailment that can be diagnosed with a laboratory test. It is because of the special nature of mental disabilities that the regulations and Third Circuit law require that lay opinion not be substituted for the medical opinions of experts. See Morales, 225 F.3d at 319.

Finally, the ALJ also did not comply with the requirements of §§ 404.1520a and 416.920a in determining the severity of Plaintiff's mental impairment. In particular, the ALJ did not make specific findings with respect to each of the four functional areas outlined in the regulations. Therefore, in addition to improperly discounting Dr. Koshnu's reports, this Court finds that the ALJ did not fully analyze Plaintiff's mental impairment to determine its severity. Therefore, remand is appropriate. On remand, the ALJ should follow the special technique set forth in 20 C.F.R. §§ 404.1520a and 416.920a for evaluating mental impairments.

    2.    <u>Plaintiff's Other Arguments</u>

Essentially what Plaintiff asserts in her remaining arguments is that in determining her RPC and ability to work at step five, the ALJ did not consider all of her impairments, whether severe or not, and how those impairments combined to limit her ability to perform even sedentary work. As an initial matter, Plaintiff claims that the ALJ found that she could perform the "full range of sedentary work." However, the ALJ's opinion did not find that Plaintiff can perform the "full range of sedentary work," instead he found that Plaintiff has the RPC "to perform a significant range of sedentary work" after consideration of Plaintiff's non-exertional limitations. (R. at 25-26) The non-exertional limitations considered by the ALJ included a limitation in Plaintiff's "ability to stoop, crouch or crawl" and a need to "avoid concentrated exposure to dust, fumes, gases and temperature extremes due to [her] asthma." (R. at 23-24) The ALJ's determination that Plaintiff "retains the capacity to adjust to work that exists in significant numbers in the national economy" was based on his comparison of her limitations to the Medical-Vocational Guidelines, not an vocational expert. (<u>See</u> R. at 24-25)

The burden at step five is on the Commissioner to show that other work exists in significant numbers in the national economy that the plaintiff could perform given her RFC, age, education and past work experience. However, to meet this burden an ALJ is not required to seek vocational expert testimony or refer to other occupational or vocational resources merely because non-exertional impairments exist and must be considered. <u>Allen v. Barnhart</u>, 417 F.3d 396, 404 (3d Cir. 2005). If a Social Security Ruling (SSR) addresses the precise issue and explains how a particular non-exertional impairment affects a claimant's ability to work, a vocational expert may not be necessary. <u>Id.</u> In his opinion, the ALJ relied on SSR 96-9p, stating that it "directs that ability to perform the full range of sedentary work is not significantly compromised by occasional limitations in the ability to stoop, crouch or crawl, and that most sedentary jobs do not require concentrated exposure to pulmonary irritants." (R. at 25)

At step five, an ALJ "must consider the combined effect of multiple impairments, *regardless of their severity*." <u>Burnett v. Comm'r of SSA</u>, 220 F.3d 112, 122 (3d Cir. 2000) (citing 20 C.F.R. § 404.1545) (emphasis added); <u>see also</u> 20 C.F.R. § 416.945. This Court finds that the ALJ did not fully address the impact of four of Plaintiff's possible limitations at step five: the ability to sit for prolonged periods, pain from the kidney stones and other ailments, mental impairment, and migraine headaches. First, to assess Plaintiff's exertional limitations, the ALJ looked to medical reports discussing the ability of Plaintiff to perform certain movements. In a medical report cited by the ALJ, Plaintiff's medical evaluator, noted that Plaintiff can "walk without difficulty" and "rise from a chair without difficulty" among other movements, but concluded that she had a "mild to moderate limitation for prolonged sitting and standing and for walking." (R. at 152) The ALJ also cites other medical evidence that supports that Plaintiff can engage in a various range of activity. However, this Court does not see any other medical evidence that addresses not just Plaintiff's ability to walk or sit but her ability to do so for prolonged periods, which she has reported she cannot do. The one report relied on that does address this, as noted above, indicates that Plaintiff has limitations in walking, standing, *and sitting* for prolonged periods. Clearly the ALJ credited the determination that Plaintiff is unable to stand or walk for extended periods of time as that conclusion formed part of the basis for his conclusion at step four that Plaintiff could not perform her past work. This Court is not clear, then, what formed the basis for the ALJ's determination that Plaintiff was able "to sit at least six hours in an eight-hour workday." Plaintiff reports that she cannot sit for prolonged periods. (<u>See, e.g.</u>,

6

R. at 736-37 (Plaintiff testifying that she has difficulty sitting due to her kidney stones)) Additionally, in making this determination, the ALJ does not address any impact that Plaintiff's kidney stones may have on her ability to sit for prolonged periods. This impairment is not reflected in any of the earlier medical reports relied on by the ALJ as they pre-date Plaintiff's kidney stone ailment, which began in April of 2006. It appears that the ALJ did not factor in any effect of the kidney stones on Plaintiff's ability to sit for prolonged periods of time because he found the problem to be resolved, stating that Plaintiff "had a stent in her ureter and was hospitalized on two occasions [for kidney stones], but quickly recovered from the inflammation and was told only to refrain from heavy lifting upon discharge." (R. at 23) He also stated that Plaintiff "testified that she was going to have the stent removed shortly after the hearing." (Id.) But, what Plaintiff testified to at the hearing was that she was in considerable pain from the kidney stones, that the stent was going to be removed, but that "now it seems like the stent is not working properly." (R. at 737) Given that the ALJ found Plaintiff's kidney stones to be a sever impairment at step two, he must at least consider any impact they may have at step five.

Second, at step five, the ALJ did not consider any impact that Plaintiff's alleged pain may have on Plaintiff's ability to work. "Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, [an] ALJ must still explain why he is rejecting the testimony." Burnett, 220 F.3d at 122 (internal citations omitted). It appears that the ALJ rejected Plaintiff's allegations of pain because he found Plaintiff's "statements concerning the intensity, duration and limiting effects of [her] symptoms [to be] not entirely credible." (R. at 23) In the opinion, in support of his decision regarding Plaintiff's exertional capacity, non-exertional limitations, and ability to work, the ALJ refers to numerous statements made by Plaintiff regarding the daily activities in which she is able to engage. However, as noted by the ALJ, in the vast majority of examples where the Plaintiff explains an activity, she "intersperse[s] the descriptions of her activities with annotations that just about every movement she made caused her pain." (R. at 24) It is not clear to this Court why the ALJ so credits Plaintiff's self-reporting of activities, but discounts her self-reporting of how she is affected by or those activities are limited by her pain. In addition, this Court finds that the ALJ failed to adequately address medical evidence of Plaintiff's pain in the record. Even before her kidney stones, Plaintiff regularly reported pain to her doctors and given pain medication and epidural blocks for pain. (See, e.g., R. at 294, 553, 577) Additionally, her August 2005 hospital admission form indicates that at that time Plaintiff was taking four different medications for pain on a daily basis. (R. 294) The record also contains medical literature regarding the effects of kidney stones which states that "[a] kidney stone in the ureter produces a SEVERE aching lower back pain that sometimes goes down into the groin." (R. at 354 (emphasis in original)) As noted above, Plaintiff reports that she experiences pain from the kidney stones and that her kidney stone issue has not been resolved. This Court did not see any medical evidence to the contrary. While the ALJ is not required to credit, or fully credit, Plaintiff's allegations of pain, see Burns v. Barnhart, 312 F.3d 113, 129 (3d. Cir. 2002), at step five, he must address the impact of all impairments, even if not found to be severe. In this case at step five, the ALJ did not fully address the medical evidence supporting Plaintiff's allegations of pain or consider any possible impact of pain on Plaintiff's ability to work. The Court finds this to be in error.

Third, the ALJ failed to consider how Plaintiff's mental impairments limited her ability to perform sedentary work. Dr. Koshnu's report assessed Plaintiff with a GAF of 55-60. The Commissioner does not appear to contest this or that "[a] GAF of between 51 and 60 indicates moderate symptoms . . . or *moderate* difficulty in social, occupational, or school functioning." (Def.'s

7

Br. at 8 n.7 (citing the DSM-IV-TR at 34) (emphasis added))  This impairment, even if ultimately found not to be severe, must be addressed at step five; the ALJ's failure to do so was in error.

Finally, although the ALJ found Plaintiff's migraine headaches to be a severe impairment at step two, he appears to discount them overall finding them to be "intermittent" and noting that Plaintiff "takes no type of preventative or special medications for migraines." (R. at 20)  Plaintiff's migraine headaches also were not mentioned as a non-exertional limitation at step five even though they were found to be a severe impairment at step two.  Even if the ALJ ultimately finds the impact to be minimal, he must address all limitations, particularly ones he has found to be severe, at step five.

Therefore, this Court finds that, on remand at step five, the ALJ must address all of Plaintiff's impairments, regardless of their severity, and the combined impact of these impairments on Plaintiff's ability to work.  Additionally, this Court cautions that while reliance on an SSR may be an acceptable substitute in general, such reliance is only appropriate where the SSR addresses all applicable impairments and may be difficult in a case such as this one where the claimant allegedly suffers from numerous exertional and non-exertional and there are medical assessments that do not appear to be adequately refuted by other medical or vocational professionals

## CONCLUSION

In light of the foregoing, this Court finds that the ALJ's opinion is not supported by substantial evidence at step two with regard to the finding that Plaintiff's mental impairment is not severe.  The Court also finds that the ALJ did not adequately address the impact of all of Plaintiff's impairments at step five.  This Court, therefore, determines that a remand is appropriate.  An appropriate Order accompanies this Letter Opinion.

 /s/ Jose L. Linares
JOSE L. LINARES, U.S.D.J.